Trenton R. Kashima (CA SBN No. 291405)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@brysonpllc.com

*Attorney for Plaintiff*

*(Additional Counsel listed on Signature Page)*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALAN HOYES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEWELL BRANDS INC. d/b/a SUNBEAM PRODUCTS, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

Plaintiff Alan Hoyes ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this class action complaint against Defendant Newell Brands Inc. d/b/a Sunbeam Products, Inc. (the "Defendant" or "Sunbeam"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## BACKGROUND

1. This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to the manufacturing, marketing, and sale of its Oster French Door Countertop Ovens, Model Numbers TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF and TSSTTVFDDAF throughout California and the United States (hereinafter the "Products" or "Ovens").

2. Defendant sold the Oster Ovens nationwide for a retail price ranging between $140 and $250 through various third-party retailers such as Bed, Bath and Beyond, Costco, Walmart, and Amazon.[1]

3. The affected Products' doors cannot be opened partially and can slam shut if a consumer's hand slips or does not hold them open. This design defect, which Defendant has acknowledged through a product recall, creates a burn hazard for all users of the Products, resulting in injuries to consumers, including Plaintiff.

4. Plaintiff and other consumers had a reasonable expectation that the Products would not pose a serious burn hazard when used as intended, including the risk that the doors can suddenly and forcefully close, trapping users' hands and arms and causing injury.

5. Defendant, through its own product page, makes affirmative statements regarding the safety and ease of use of its Products. On its website, Defendant advertises "elegant French Doors open with a single pull, making it easy to insert and remove food."[2] Defendant's

---

[1] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard (last accessed October 28, 2025)

[2] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 28, 2025)

representations reinforce an impression of safety and convenience, while concealing that the doors may snap shut without warning and burn consumers.

6. Defendant's Product manual similarly fails to address this danger. Although it lists at least twenty-three (23) safeguards, none of them relate to the operation or potential hazards of the French-door mechanism.[3]

7. Upon information and belief, neither the Product's packaging, user manual, nor Defendant's advertising materials warn consumers about the possibility of the doors suddenly closing, causing burns to its users.

8. Despite Defendant repeatedly highlighting the convenience and safety of its Products, on September 25, 2025, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 1.29 million Oster French Door Countertop Ovens (imported and distributed by Defendant Sunbeam Products, Inc.) (hereinafter "the Recall"). The Recall identified a hazard that "the oven's doors can unexpectedly close, posing a burn hazard to consumers." The notice covered models TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF, and TSSTTVFDDAF, sold nationwide from August 2015 through July 2025 for approximately $140 to $250.[4]

9. In addition to the Recall, consumers have been instructed to "immediately stop using" the Products.[5]

10. As shown on its website, Defendant represented which of its products were affected by the Recall[6]:

\ \

\ \

\ \

\ \

[3] https://s7d9.scene7.com/is/content/NewellRubbermaid/TSSTTVFDMAF_Grover_IB (last accessed October 28, 2025)
[4] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard (last accessed October 28, 2025)
[5] *Id.*
[6] https://recall.oster.com/ (last accessed October 28, 2025)

| **Model Number: TSSTTVFDDAF** | **Model Number: TSSTTVFDDG** |
|---|---|
|  |  |
| **Model Number: TSSTTVFDMAF** | **Model Number: TSSTTVFDXL** |
|  |  |

*Figure 1 – Defendant's Recalled Products*

11. Consumers who purchased the Products learned through the Recall notice that the Products posed a serious safety hazard requiring significant corrective action.

12. Defendant refuses to provide refunds for its defective Products. Instead, Defendant's only offer is a clip-on magnet to help keep the French doors open. This corrective measure is a proverbial band-aid on a literal burn wound.

13. The Recall also is inconsistent with general industry practices because Defendant failed to offer refunds as an alternative to its jerry-rigged clip-on solution. A refund option would incentivize consumers to surrender their dangerous products pursuant to the Recall, thereby getting more of the dangerous products out of circulation. Defendant has decided not to follow prevailing industry standards. Instead, Defendant implemented a half-hearted Recall that papers over a fire hazard.

14. Accordingly, Plaintiff brings this action individually and on behalf of a Class of

similarly situated individuals for equitable relief and to recover damages and restitution for violations of the Uniform Commercial Code's (UCC) warranty provisions, the Song-Beverly Consumer Warranty Act, California consumer protection statutes, unjust enrichment, and breach of implied warranty.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant (including Plaintiff), and (4) there are more than 100 proposed Class members.

16. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed themselves to the laws, rights, and benefits of the State of California. Defendant distributed the Products to California consumers. This distribution included distribution through Defendant's own website and third-party retailers, which sold the Products to California consumers. Defendant marketed the Products on the internet, and Defendant expected and knew that consumers in California would purchase some of those Products in the state of Massachusetts

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because many Class Members reside in the Eastern District of California, and throughout the state of California. Moreover, a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

18. Plaintiff Alan Hoyes is a citizen of San Joaquin County, California and owns a Model TSSTTVFDDG oven. The Product snaps shut immediately when he lets go of the door, and Plaintiff has been burned by the oven and as a result of the door unexpectedly snapping shut.

19. Plaintiff purchased the oven from Amazon and routinely used it to cook. He has encountered hazardous events from the oven and has been burned. He remains apprehensive that the device could burn him more and does not think the repair kit provided by Sunbeam during the Recall is sufficient to safeguard him. He fears the product could cause harm to him and/or others.

20. Defendant Sunbeam is a Delaware corporation with its principal place of business located at Boca Raton, Florida. Defendant designs, manufactures, markets, distributes, advertises, warrants, and sells consumer kitchen appliances, including the Recalled Products, throughout the United States, including in California. At all relevant times hereto, Defendant created and/or authorized the false and misleading advertising, labeling, and representations regarding the safety and performance of the Products.

## FACTUAL ALLEGATIONS

### A. Defendant Manufactured, Distributed, Marketed, and Sold the Recalled Products

21. Defendant manufactured, distributed, marketed, and sold the Products. The Products were specifically marketed as a safe, convenient, and easy-to-use countertop oven suitable for everyday household cooking.

22. Defendant's product page represents that its products are safe and easy to use, which are misleading by omission. It touts "Elegant French Doors open with a single pull, making inserting and removing meals easy and convenient," and repeats that the "French doors open with a single pull, making it easy to insert and remove food."[7] Defendant's Products sold through third-party retailers, such as on Amazon.com, also highlight the ease of use of the Products subject to the recall as seen below.[8]




*Figure 2 – Image from Amazon website selling Oster Air Fryer Oven*

---

[7] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 28, 2025).

[8] https://www.amazon.com/Oster-Digital-French-Door-Oven/dp/B08MXSZHB5?th=1 (last accessed October 28, 2025)

23. Additionally, Defendant engaged in extensive marketing efforts to promote the purported benefits of the Product. Defendant and its retail partners featured the Product in video advertisements, including a QVC segment highlighting the “French door” design as a key selling point, emphasizing one-handed operation, easier access to the cooking cavity, and convenient placement and removal of food.[9]

**B. <u>Defendant’s Product Design is Hazardous and Exposes Users to Potential Burns</u>**

24. In reality, Defendant’s Products pose a serious burn hazard, as the doors can suddenly and forcefully close, trapping users’ hands and arms, causing injury and burns.

25. Defendant’s explicit representation that the “French doors . . . mak[e] it easy to [] remove food” is false and misleading.

26. Furthermore, nowhere does the product page or manual disclose the material risk that the doors can suddenly and forcefully close while a user is inserting or removing food, thus creating a foreseeable burn hazard.

27. This glaring omission further renders the explicit representation that the doors “mak[e] it easy to insert and remove food” false and misleading. Defendant did not have to make these representations about the French doors’ ease-of-use, but because they did, Defendant had a duty to disclose that the doors do not, in fact, “mak[e] it easy to [] remove food,” and that they instead pose an unreasonable risk of closing on consumers and burning their hands.

28. CPSC’s September 25, 2025 Recall announcement states that Sunbeam received at least 95 reports of the door unexpectedly closing, causing burn injuries to the Oven’s users, including second degree burns.[10] Consumers purchased and utilized these Ovens under the belief that they were safe for use and instead, they have been subjected to the risks of harm and burns.

29. Plaintiff has also been hit and burned by the Oven due to the door swinging shut while he attempted to use it as intended.

30. Defendant’s Products were manufactured and distributed with doors that lacked sufficient holding force or secure hinge mechanisms, permitting them to swing closed unexpectedly

[9] https://www.youtube.com/watch?v=0cgBWUfvDWs (last accessed October 28, 2025).
[10] *Id.*

during use. Despite the existence of this hazard, the Product manuals[11], packaging, and online materials did not include any warnings that the doors might suddenly close or cause injury.

31. Prior to the recall announcement, multiple consumers publicly reviewed Defendant's Products, complaining that the doors to the Ovens were defective.

32. For example, a review from 2022 noted that one of the Products part of the Recall, was "just dangerous" and warned that, "[t]he french doors cannot be opened with one hand and must be opened completely on both sides, or they will slam shut on you. Hard to do and super dangerous to attempt when the unit is on." [12]




*Figure 3 – Screenshot of Negative Review from Defendant's Website*

33. Another review published in 2024 that rated the Product as 1-star, stated that "[the] doors don't stay open and will close on you. Resulting in burns."[13] Another reviewer who posted the same year also noted that they had been burned numerous times due to the doors closing while removing food. *See* below.

\ \

\ \

\ \

\ \

---

[11] https://newellbrands.imgix.net/a38f4fbe-f0f5-3f95-9b72-22bea77a2428/a38f4fbe-f0f5-3f95-9b72-22bea77a2428.pdf (last accessed October 28, 2025)

[12] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 28, 2025)

[13] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 28, 2025)




*Figure 4 – Screenshot of Negative Review from Defendant's Website*

34. Many of the negative reviews include contemporaneous responses from Oster, apologizing and inviting the consumers to contact Customer Care. Thus, demonstrating that Oster had reviewed and acknowledged the consumer's complaints.

35. The reviews citing that the doors close during use, coupled with burns, mirrors the hazard later identified in the Recall. Despite some of their reviews being over three years old, Defendant did nothing to correct the hazard or warn its users of the potential risks associated with using their Product until the Recall was announced.

36. Thus, Defendant knew, or should have known, that the advertising and labeling of its Products were false and misleading as well as misrepresented material facts concerning safety.

37. Defendant knew, or should have known, that the representations and statements made through its labeling and advertising would mislead consumers to purchase the Products instead of competitors' cheaper products based on a false belief that the Products were safe for use.

38. Had Defendant disclosed the true risks of the Products, Plaintiff would not have purchased the Product, or would have paid less for it, had the Products been truthfully and accurately labeled.

## C. <u>The Product Recall</u>

39. On September 25, 2025, Sunbeam announced a recall of approximately 1,290,000

Products.[14] The Recall followed at least 95 reported incidents and multiple burn injuries, including second-degree burns, reported to date. The U.S. Consumer Product Safety Commission concluded that the Ovens posed a significant risk of causing injuries and burn hazards.

40. To address the Product defect, Sunbeam advised its consumers to stop using the recalled countertop ovens immediately and contact Sunbeam Products Inc. to receive a repair kit, which includes a Door Assist Magnet—a clip on device that attempts to prevent the defective doors from swinging shut using a magnet. In order to obtain the repair kit, consumers have to go on to Defendant's website for the Recall, confirm their model and submit their personal information, including name, email, phone number, and mailing address.[15]

41. Consumers who purchased the Products learned through the Recall notice that the Products posed a serious and undisclosed safety hazard. Rather than providing a true remedy, Defendant sought a cheap out by devising a Recall that isn't a Recall at all. Instead, consumers who participate in the Recall are expected to keep their defective and dangerous Oster Ovens with French doors designed with defective hinge mechanisms prone to closing while being used as intended. Instead, to paper over a major fire hazard, Defendant's jerry-rigged solution is a clip-on pin that attempts to prevent the still-defective hinge mechanism from closing shut with a magnet.

42. This clip-on magnet is an ineffective band-aid for a severe burn hazard. It does absolutely nothing to address the Defect in the Products. Consumers who participate in the Recall must keep their defective Ovens that are prone to closing shut and resulting in burns, in the hopes that a clip-on magnet will reliably hold the defective Doors open and prevent the defective hinges from slamming shut—as they are prone to do.

43. The Recall fails to provide sufficient reimbursement for the premium prices consumers paid in reliance on Defendant's misrepresentations and omissions. First, it saddles consumers with a defective, dangerous Product that is not changed in any form from its defective design. Instead, consumers are expected to use a clip-on magnet and hope it holds the defective Doors open. Second, many consumers may have disposed of their Product given that it was

[14] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard (last accessed October 28, 2025)
[15] https://recall.oster.com/ (last accessed October 28, 2025)

dangerous, that it posed serious burn hazards, and that the Recall issued on the Product instructed consumers to stop using the Product. The Recall is fatally flawed because it does not give consumers the option to obtain a cash refund, instead only offering a clip-on magnet meant to hold open a defective door prone to slamming shut—a clip-on magnet, it bears emphasis, provided by the same company than designed, manufactured, and sold a Product with dangerously defective doors prone to slamming shut and burning consumers. Given Sunbeam's initial defective design and its dishonesty in marketing the Product, Plaintiff and other consumers cannot be blamed for having little faith in Defendant's jerry-rigged solution.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

44. Defendant continuously manufactured, marketed, and sold the defective Ovens to unsuspecting customers. At all times relevant, it continuously represented that the Ovens were fit for their intended use

45. By continuously repeating these false representations and failing to disclose that the Ovens contain the Defect, Defendant engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendant might seek to apply.

46. As the designer and manufacturer of the Ovens, Defendant knew or should have known if the Defect before distributing the Ovens into the consumer marketplace.

47. Defendant's knowledge of the Defect is evidenced by, amongst other things, the Recall Notice, customer reviews, and reports of consumers suffering burn injuries, including the two reports of second-degree burns.

48. Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the Defect, and yet Defendant knowingly continued to allow the sale of the Ovens. Plaintiff's and other Class Members' claims are therefore not time-barred.

49. Moreover, even after the Recall, there is no evidence that news of the Defendant Recall Notice or Defect reached all Oven owners.

50. Plaintiff and other Class Members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Defendant knowingly failed to

disclose material information within its knowledge about the Defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

51. Throughout the time period relevant to this action, Defendant concealed from, and failed to disclose to, Plaintiff and the other Class Members vital information about the Defect described herein.

52. Defendant kept Plaintiff and the other Class Members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

53. Defendant had a duty to disclose to Plaintiff and the Class Members the true quality and nature of the Ovens and that the Ovens have a uniform Defect.

54. Instead, Defendant continued to market the Ovens as suitable for their intended purpose to further profit from the sale of its popular Oven products and prevent Plaintiff and other Class Members from seeking redress.

55. Plaintiff and the other Class Members justifiably relied on Defendant to disclose the true nature of the Ovens they purchased and/or owned because the Defect was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

56. Defendant's affirmative acts of concealment, including its continued marketing of the defective Ovens as safe, easy to use, reliable and fit for its intended purpose while possessing knowledge of the Defect, further support estoppel and tolling of any applicable limitations period.

## **CLASS ACTION ALLEGATIONS**

57. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

58. The proposed Class is defined as follows:

> Nationwide Class: All persons within the United States who purchased Defendant's Recalled Products, including their models, TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF, and TSSTTVFDDAF.
>
> California subclass: All persons within the state of California who purchased Defendant's Recalled Products, including their models, TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF, and TSSTTVFDDAF.

59. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

60. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

61. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether the Products in question were defective;

b. Whether the defective nature of the Products would be considered material;

c. Whether the defective nature of the Products constitute an unreasonable safety risk;

d. Whether Defendant knew or should have known about the defective nature of the Products;

e. Whether Defendant had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

f. Whether the defective nature of the products has decreased the value of the Products;

g. Whether Defendant's conduct constitutes an unlawful breach of the implied warranty of merchantability;

h. Whether Defendant's conduct constitutes an unlawful breach of express warranties;

i. Whether Defendant's fraudulently omitted material information in its interactions with consumers;

j. Whether Defendant were unjustly enriched;

k. Whether Plaintiff and Class members are entitled to damages and/or other monetary relief.

62. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

63. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

64. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

65. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

66. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

67. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

68. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and

a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

69. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Civil Code §§ 1750, *et seq.***
**(By Plaintiff, individually, and on behalf of the California Class)**

70. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq*.

72. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of the Ovens to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The benefits purchased by Plaintiff and the Class are "goods" within the meaning of the statute. Cal. Civ. Code § 1761(a).

73. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Ovens with the uniform Defect:

a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

b. "Representing that the Products are of a particular standard, quality and grade when they are not" (a)(7);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

e. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." (a)(16).

74. Defendant's unfair or deceptive acts or practices, including its concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and California Class Members, about the true safety, quality, and true value of the Products.

75. Further, despite Defendant's knowledge of material facts concerning the existence of the serious safety risks posed by the Products, Defendant actively concealed the serious safety risks and the Defect from consumers by failing to disclose the serious safety risks or Defect to consumers.

76. Defendant knew, or otherwise should have known, that the Product contained the Defect and posed serious safety risks based upon: (1) Defendant's own internal testing, data, and surveys; (2) Defendant's Recall; (3) the multiple incident reports; and (4) customer reviews of the Products.

77. Defendant omitted, concealed, and failed to disclose to consumers that the Products pose serious safety risks, including that the consumer could get burn due to the doors unexpectedly closing. Rather than disclosing that information, Defendant marketed the Products as safe and suitable for their intended purpose.

78. The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Products, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Product. Rather than disclose this information, Defendant marketed the Product as complying with safety standards and regulations, with the utmost manufacturing and design.

79. Plaintiff and the California Class suffered injury in fact and actual damages resulting from Defendant's material misrepresentations and omissions.

80. Defendant's violations present a continuing risk to Plaintiff and the California Class, as well as to the general public, and therefore affect the public interest.

81. Defendant is on notice of the issues raised in this Count and this Complaint by way of, among other things, the Recall, as well as their own intrinsic knowledge of defect, consumer complaints and notice of consumer reports and reviews.

82. Concurrently with this complaint and Pursuant to § 1782(a) of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed herein and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by § 1782, Plaintiff will move to amend their Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.

83. Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the Class, seek injunctive relief, including an order to enjoin Defendant from continuing its deceptive advertising and sale practices.

84. Pursuant to Cal. Civ. Code § 1780(d), declaration of venue is attached to this Complaint.

**COUNT II**
**Violations of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(By Plaintiff, individually, and on behalf of the California Class*)***

85. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

86. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

87. Plaintiff and California Class Members who purchased Defendant's Products suffered an injury by virtue of buying Products in which Defendant omitted the Products' true quality. Had Plaintiff and California Class Members known that Defendant omitted material information regarding the Products, they would not have purchased the Products.

88. Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this Complaint, including, without limitation, violations of the Song-Beverly Consumer Warranty Act, Cal Civ. Code §§ 1790, et seq., and negligent or fraudulent misrepresentation.

89. There is no benefit to consumers or competition by allowing Defendant to deceptively label, market and advertise its Products.

90. Defendant's conduct, as described herein, also constitutes a "fraudulent" business practice violative of the UCL. As explained in the preceding paragraphs, Defendant's false statements about the Product fraudulently present the impression that the Products were adequately safe to be used in households and would be easy to set up and maintain. This conduct was designed to—and did—deceive consumers as to the true quality and value of the Products they purchased.

91. Defendant knew, or should have known, that its false representations and conduct constituted unlawful, unfair and fraudulent business practices likely to deceive reasonable consumers.

92. Plaintiff and Class Members suffered injuries, in fact, and lost money as a result of Defendant's UCL violations in that they were deceived into purchasing the Products, which were not adequately safe or easy to use for the purposes of Plaintiff and the California Class Members.

93. At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiff request inadequate, Plaintiff and the California Class Members are entitled to equitable relief such as restitution and injunctive relief under Cal. Bus. and Pro. Code § 17203, enjoining Defendant from continuing to conduct business through unlawful, unfair and fraudulent acts and practices.

94. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and other California Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not

**COUNT III**
**Breach of Implied Warranty of Fitness for a Particular Purpose**
**Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code §§ 1790, et seq.**
**(By Plaintiff, individually, and on behalf of the California Class)**

95. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

96. California Class Members are consumers who purchased the Products primarily for personal, family or household purposes. California Class Members did not use the Product for business purposes.

97. California Class Members purchased the Products either directly from Defendant or from an authorized retailer in California.

98. California Class Members purchased the Products to be a safe, easy to use household kitchen appliance. The Products are advertised with ease of use of the Products. As discussed in more detail herein, Defendant specifically advertised the Products as easy to use and safe. Individuals purchasing the Products for their ease of use and safety features could not use them for that purpose because they are not safe or easy to use.

99. California Class Members discovered that the Products were not as safe as claimed when the Recall for the Products was issued indicating the Ovens pose a risk of having its doors unexpectedly closing, resulting in burn injuries unless repairs were made.

100. Defendant had reason to know that consumers of the Products would use them for a particular purpose: household kitchen oven appliance.

101. Since Defendant is a manufacturer of kitchen appliances and specifically sold the Products as safe and easy to use ovens, the California Class Members relied on Defendant's skill and judgment in furnishing adequately safe and easy to use ovens.

102. Defendant had reason to know that California Class Members would rely on its skill and judgment in furnishing adequately safe and easy to use oven because it advertised the Products as such.

103. Plaintiff and California Class Members were harmed by Defendant's conduct.

104. The failure of the Products to be suitable was the cause of harm to Plaintiff and the California Class Members.

105. The Products are, in fact, not adequately safe and easy to use to be fit for intended use, and Plaintiff and the California Class Members suffered damages as a result of Defendant's breach of implied warranty, the nature and exact amount to be determined at trial.

**<u>COUNT IV</u>**
**Unjust Enrichment**
**(On behalf of the Plaintiff and the Nationwide Class, or in the Alternative, the California Class)**

106. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

107. All preceding paragraphs are incorporated by reference as though fully set forth herein.

108. Defendant represented to Plaintiff and Class members that its Products were reliable, merchantable, and in good repair.

109. The defect caused the Products to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

110. Defendant knew or should have known that its Products could not conform to its representations because of the defect.

111. Defendant mispresented, concealed, and omitted material information concerning the defect.

112. The defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

113. Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase their Products at a substantially higher price than what they would otherwise have paid.

114. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Products.

115. Plaintiff and Class members would not have purchased the Products if they knew of the defect, or they would have only paid substantially less.

116. Plaintiff and Class members conferred substantial benefits on Defendant by purchasing defective Products at a premium without receiving a product that conformed to Defendant's representations.

117. Defendant knowingly and willingly accepted and enjoyed these benefits.

118. Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

119. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

## COUNT V
### Breach of Express Warranty
### (on behalf of Plaintiff and the Nationwide Class, or in the Alternative, the California Class)

120. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

121. At all times relevant hereto, Sunbeam designed, manufactured, produced, promoted, marketed, and sold the Products.

122. Sunbeam, as the manufacturer, marketer, distributor, and seller, expressly warranted that the Products had "easy-to-use" French doors that "mak[e] it easy to . . . remove food." However, the Products' defectively designed and manufactured doors were never easy-to-use and never made it easy to remove food. In reality, the French doors are defectively prone to slam shut, burning consumers hands and arms, and thus the Products created an unreasonable severe burn hazard when simply used as intended.

123. Sunbeam's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products, became part of the basis of the bargain

between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

124. The Products do not conform to the express warranty because the representations are false or misleading.

125. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products; (b) they paid a substantial price premium for the Products based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

126. All conditions precedent to Defendant's liability under this warranty and/or contract were performed by Plaintiff and the Class when they purchased the Products and used the Products as directed.

127. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

128. Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

a. Defendant knowingly sold a defective product without informing consumers about the defect;

b. The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and members of the Class;

c. Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

d. A gross disparity in bargaining power existed between the parties.

129. Defendant was given sufficient notice of its breach of notice *inter alia* from numerous consumer complaints and through its own Recall of the Products for the Defect at issue.

**COUNT VI**
**Breach of Implied Warranty of Merchantability**
**Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code §§ 1790, *et seq*.**
**(By Plaintiff, individually, and on behalf of the California Class)**

130. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

131. California Class Members are consumers who purchased the Products primarily for personal, family or household purposes. California Class Members did not use the Products for business purposes.

132. California Class Members purchased the Products either directly from Defendant or from an authorized retailer in California.

133. Pursuant to Cal. Civ. Cod. § 1782, the Products were accompanied by an implied warranty of merchantability.

134. Defendant impliedly warranted that the Products would pass without objection in the trade for the ordinary purpose for which they are intended. This includes the Products being adequately constructed or assembled to function as safe and easy to use countertop ovens and conforming to the promises or affirmation of fact made to Plaintiff and California Class Members.

135. As evidenced by the Defect alleged herein, the Products are non-merchantable because they do not have the quality the buyer reasonably expects. They do not pass without objection in the trade; namely, they were not adequately constructed or assembled to serve as safe and easy to use countertop ovens and because they do not or could not conform to the promises or affirmations of fact made to Plaintiff and California Class Members.

136. As a result of Defendant's acts and omissions, Plaintiff and California Class Members sustained damage in the amount actually paid, plus prejudgment interest thereon at the legal rate.

137. As a further result of Defendant's actions, Plaintiff and California Class Members sustained incidental and consequential damages in an amount yet to be determined, plus interest at the legal rate.

138. As a further result of Defendant's actions, Plaintiff and California Class Members sustained damages equal to the difference between the value of the Products as accepted and the value the Products would have had if they had been as warranted.

139. As a direct result of Defendant's acts and omissions and in pursuing Plaintiff's claims, Plaintiff needed to retain legal counsel. Pursuant to the Song-Beverly Consumer Warranty Act, Plaintiff is entitled to recover his attorneys' fees based upon actual time expended and reasonably in connection with the commencement and prosecution of this action.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action.

b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendant's unlawful conduct.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of interest as provided by law, including pre-judgment and post-judgment interest.

Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims so triable.

Dated: November 3, 2025

**BRYSON HARRIS SUCIU & DEMAY PLLC**

*/s/ Trenton R. Kashima*

Trenton R. Kashima (CA SBN No. 291405)
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@brysonpllc.com

Nick Suciu*
**BRYSON HARRIS SUCIU & DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Telephone: (616) 678-2180
E-mail: nsuciu@bryson.com

**Pro hac vice forthcoming*